The next case is 19-2409 Northern Iowa United States v. Chase Zerba. Thank you. Ms. Sheets, before you begin, I note you were appointed under the Criminal Justice Act and the court appreciates your your help. Good morning, good morning. My name is Ray Sheets. I'm from Cedar Rapids, Iowa. This case involves one issue only. It's a matter of restitution. So the funeral expenses that are at issue in this case were first raised as an issue by the probation office in the pre-sentence report. The pre-sentence report, the probation office recommended that Mr. Zerba, my client, pay the funeral expenses of the robber, of the guy that was attempting to rob during this marijuana transaction. The defense filed an objection to that recommendation. We stated that, first of all, the robber was not a victim. He was participating in criminal conduct and the statute specifically excludes any restitution to anybody that's involving criminal conduct. So the parties, that was an issue at sentencing. Was there another basis for the objection? Well, during that initial objection at the pre-sentence level, no. We just said he's not a victim. We object to paying restitution. When it came to the sentencing hearing, the parties fully briefed. I submitted a seven-page brief and I listed several different reasons why the defendant was not required to pay restitution. Counsel, I need to look at the paragraph in the PSR that you referred to. It is paragraph 102 and it states that the robber was a victim in paragraph 24. So we actually objected in two different places within the pre-sentence report. Give me a moment, I grabbed the PSR from the wrong case. I want to see how the PSR justified. So paragraph 102 claims restitution on behalf of mother and father. Yes. And what was, so he must have said more than just the robber's not a victim. Didn't you address the parents at all in your objection? Well, it goes back to, for the reasons stated in paragraph 24, which I lodged another objection to this robber being identified as a victim. That's at page 11 of the PSIR. Yes. Okay, all right. So we get to the sentencing hearing. The parties briefed the issue. The government relied exclusively on the MVRA, the mandatory victim restitution act. The defense filed a seven-page brief listing several reasons why the MVRA didn't apply, the VWPA didn't apply. At no point in time did the government raise anything about the plea agreement. So at the sentencing hearing, the district court finds that the MVRA doesn't apply. It really wasn't sure if the VWPA applied, but because there was a paragraph, paragraph 31 of the parties plea agreement, a stock paragraph that's contained in every plea agreement, it says defendant agrees defendant will be required to pay full restitution to all victims of the offense. And based on that, the district court found that the defendant agreed to pay the funeral expenses. And we're like, we did not agree to that. In fact, from the get-go, we have argued that the robber was not a victim. We've argued that from the beginning. In lieu of that, the district court, sua sponte, found that the plea agreement required the defendant to pay these funeral expenses. Well, they actually, you know, if you think about it, the language of the plea agreement is really strikingly broad because it requires you to pay to victims, including relevant conduct victims. And the relevant conduct may in fact be broad enough to encompass all of the activity that was going on at this point, right? And isn't that what the trial court said? That just if you look at that, that there's got to be a difference between a victim under the ax and the relevant conduct victims, right? And that, that, you know, then this sort of distinction that's being drawn between the crime that was afoot that Mr. Plotz was involved with, the robbery, and the crime that was involved with by Mr. Zerba, the conspiracy to deliver drugs, that that falls into that relevant conduct thing and that that's enough. That's broad enough. Now, the question is, is why is the court wrong with that? What's the error in that analysis? Well, first of all, there's nothing in the plea agreement that specifically lists this expense. And the reason I mentioned that is if there's any ambiguity at all in a plea agreement, which I think reasonable people could argue that there is in this case. In this case, is this robber a victim? I think 99 out of a hundred lay people would say he's absolutely not a victim. But the bottom line is that it's ambiguous and any ambiguity shows that there was never a meeting of the minds and in any contract, there has to be a meeting of the minds. And in addition, the case law is clear that any ambiguity is resolved in the defense. And so this was never contemplated by the parties in the plea agreement. And from the beginning, when it was raised at the very first time by the probation office, the defense objected. And then to get the district court's sua sponte interpretation of the plea agreement, I think that wasn't a position argued at all by the government. And when this recent case came down from the Supreme Court in the spring of 2020, dealing with the it's called the party presentation principle that the courts are obliged to rule on the issues that have been argued by the parties and not to go out and try to find other arguments, I think that case is right on point. I submitted a 28J letter on June 1st. It would be interesting to see how many deviations from that principle we could find the Supreme Court has committed in the last 50 years. I suspect it would number in the hundreds. I found it to be right on point to this case. I can answer that. Maybe. Well, no, I don't. Are you familiar with the Seventh Circuit's decision in the United States v. Price? I cited a case by the name of Randall. Okay. I'll see if government counsel are. I'm going to reserve my last minute of time, if they are. Ms. Williams? She's locked up. Ms. Williams, you need to unmute, I think. She's locked up, Jim. She's got to log off and log back on. Because she's not moving or breathing right now. Up there we go. Ms. Williams, you're back on screen. Are you unmuted? I am now, Your Honor. Can you hear me? I can. Your picture, your image is shaky a little bit, but let's proceed. Thank you. Hope it hangs on. Thank you, Your Honor. Lisa Williams, appearing here today on behalf of the Northern District of Iowa, thinks my two colleagues were going to have successful video arguments, and I've been left with the technology difficulties. But we will persevere through. I would like to begin by responding to a few of the issues that were raised by Mr. Sheets. Let me ask you initially, are you familiar with the Seventh Circuit decision that I referred to in U.S. v. Price? I am not, Your Honor. And I think I dropped off at the time that you referred to that discussion about that. Well, it's factually almost on all fours. You had a conspirator who was cooperating, and so the defendant killed him. And the question was, do the parents get restitution for funeral expenses? So it's too bad neither of you found that, because the court's disposition of that appeal is not consistent with either of your positions. But go ahead. And knowing nothing about that case, I would question whether some of it is somewhat distinguishable here, because in this case the person who was killed, the victim, wasn't conspiring with the people who murdered him. Okay. Now, that's where I was before I found Price. And my reaction to your argument was that if Plotz and Zerba had been indicted and were being tried for the events, for these events, for the drug conspiracy that Zerba was convicted of, based on the facts we had before us, and either defendant requested a multiple conspiracies instruction, it would be clear under Eighth Circuit law that the request would be denied. And I would conclude from that that your argument, therefore, you lose this appeal. As it was argued. It's funny, Your Honor. I thought of it in those exact same terms if I, as a prosecutor, were to charge these people together. And, in fact, we have two members of the Plotz conspiracy who are not dead. So if I would have charged Biener and Jones in one big conspiracy, I don't think that the multiple conspiracy instruction would be denied. I think under RADP it would have been granted, because I don't think there's ever an agreement between these two distinct groups. And that's why it fails. There's no meeting of the minds. I thought this was an ongoing affair. Well, first of all, not with this defendant. Zerba had never met these individuals before. The only point in contact was defendant Biener. He, defendant Biener was the one with the relationship with defendant Zerba, with the prior drug relationship. But Plotz had never purchased any drugs from any of those men ever before. He's there as Biener's henchman. Well, he's the mastermind of the robbery. I'm talking about the drug conspiracy. The robbery is a sideshow or a bit part in the drug conspiracy, as I'm looking at things. And so no way would you get a multiple conspiracy instruction because of the robbery sideshow if the government was charging Plotz, Biener, Zerba, and everybody else, Clemens, and all these guys with a drug conspiracy. And again, I respectfully, from the prosecution side of the bench, disagree. I think that we probably cannot prove that they're all, not probably, we can't. The objective of how to fulfill the goals of the conspiracy, to fulfill their ultimate objective, the means that they have agreed upon, are dramatically different between these two groups of men. There is no meeting of the minds with respect to how the agreement is going to... All right, so if we reject this argument, we reverse? And if the sui spani plea agreement doesn't hold up under the rather rigorous restitution case laws, that means we reverse? No, your honor. I think that the court has multiple grounds to affirm the district court. I also want to address the classification of... What are the other grounds, please? Well, so this is not a sui spante action by the district court. The parties plea agreement was incorporated, and its provision that restitution would be paid, was incorporated in the PSR, as well as the statute of... Let me stop you. I just want to clarify. You are not arguing that the Paris are independent victims? No, that's correct, your honor. They're standing in the shoes of Mr. Plotz because he's deceased. Their estate then stands in his shoes as victims. They're derivatives of someone who, if he's a participant, you lose. Correct. Unless the plea agreement saves you. That's correct, your honor. Then you'll be very sorry you didn't find Price before you ventured into this. Now, I don't mean you personally, but your team. I'm already very sorry I didn't find Price, your honor. Yeah, it's just the cat's out of the bag. The parents in Price had a derivative claim, and they stood as victims alone, and were not dependent upon the conduct of Plotz. They were independent victims, and therefore, they were entitled to restitution. Now, having abandoned that... Because they had financial harm in paying for the funeral. Exactly. So now Mr. Sheets has reminded us that the Supreme Court wants us to focus on the presentation principle. I think the presentation principle will now direct us to really tell me why the plea agreement is not ambiguous, and why it should not be construed in the favor of Mr. Zerva. Sure. Thank you, your honor. As you noted, Judge Erickson, the plea agreement language about victim and who is a victim is broad, and it was intentionally broad to capture a larger classification of individuals than the statute provides for. If, as Mr. Sheets suggested, we had intended to rely on the statutory definition of victim, there would be no need to insert the words relevant conduct victim following that, and we could have simply referred to the statute in the terms of the plea agreement as to how we were defining victims, but the parties did not do that. We included relevant conduct victims with a clear intent to broaden the classification of victims, and the defense would have you read that as just extra meaningless language, but that, of course, is not how we construe plea agreements, written agreements, and contractual agreements. We have to give meaning to the terms that the parties agreed on, and here, the only reasonable way to interpret that language is to interpret it broadly, that relevant conduct victims. I saw that he said that the government doesn't cite any case law about what a relevant conduct victim is. That is completely unnecessary because it's a term of art that we pull from the guidelines. This term of relevant conduct is very ensconced in guidelines. Your argument is that the intent was to write 3663, this part of the statute, out of the statute. There is no participant exclusion thanks to this language. We have not advanced that argument on appeal, Your Honor, but the argument I'm making is that we did not intend to rely on the statutory definition of victim. We intended to make it broader. If a relevant conduct victim doesn't include a co-conspirator under your argument, I don't understand how to parse your argument any other way than the plea agreement, that language in the plea agreement kicked the participant statute off the table. I think that that's a fair agreement, Your Honor, or a fair interpretation of what the government is arguing because we are arguing that this is a much broader definition. That's why we're here is to figure that, sort that out. I do want to make two corrections to the record very quickly. The defense has argued that the government never advanced these theories in the district court. I disagree. The government sentencing memo at docket entry 107 specifically incorporates the pre-sentence investigations grounds for restitution, which were 3663, as well as the plea agreement, into its restitution arguments. And so I do not believe that the government has ever waived this. And then also the plea agreement, again, at paragraph 20, provides that the government has the right to defend any ruling of the court on appeal or in any post-conviction proceeding. And so the government has not waived these arguments. We've not set them aside. We have, in fact, we're free to defend and advance them here before the court. And I do see that. I believe my time is run. Thank you. Mr. Sheets, you've got a minute here. You're muted, Mr. Sheets. You need to unmute. Thank you, Your Honor. The government's argument today would carry a lot more weight of the importance of the plea agreement. Had they made any mention of it in their sentencing memo or at the district court, nothing was said. I think that's very important. It shows that neither party contemplated this plea agreement to include restitution and funeral expenses. If I could get a cite for that, Cite's case, I really don't have any other arguments. I think I made all my points in my initial argument. If I could get a cite, though, I'd very much appreciate it. I'll give you the cite, but we're not inviting a supplemental brief. Okay. 906F3-685. Very good. I'm sorry that I didn't catch that. That's all I have, Your Honor. Thank you. Thank you, counsel. Case has been well briefed. Argument's been informative. And you've dealt well with the mysteries.